UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-10033-CIV-MOORE

TRUMAN ANNEX MASTER PROPERTY
OWNERS' ASSOCIATION, individually and
on behalf of its members who own residential
properties within the Truman Annex Planned
Residential Development,

    Plaintiff,

v.

UNITED STATES OF AMERICA and
CITY OF KEY WEST, an incorporated
municipality of the State of Florida,

    Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANT CITY OF KEY WEST'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant City of Key West's, ("Defendant") Motion to Dismiss (dkt # 6). A Response (dkt # 10) and Reply (dkt #15) were also filed.

UPON CONSIDERATION of the motion and being otherwise fully advised in the premises, the Court enters the following Order:

**I.**     **Background**

This cause of action stems from a dispute regarding access and ownership rights of the Truman Annex Parcel ("'Parcel'") located in Key West, Florida. In 1942, in order to enlarge the Key West Naval Base, the United States, through condemnation, became fee simple owners of the Parcel. See Compl. at 2. In the condemnation proceedings, the City of Key West ("City") conveyed "all rights, title, and interest to any such streets and roadways on the [Parcel] to the United States." Id. Included within the Parcel was a street ("Private Street") running west from

Thomas Street through the Naval Base. Id at 2. The Key West Naval Base closed in or around 1974. Id at 2. In 1986, the United States sold the Parcel at auction to Pritim Singh ("Singh"). Id at 4. The transaction was finalized in 1987 and the United States conveyed the Parcel, its streets, and roadways to Singh via quitclaim deed. Id. Contemporaneously with the 1987 conveyance, Singh granted the Navy an easement, which allows the Navy to continue to use Private Street to access the remainder of the closed base. Id. Singh granted an additional easement to the State of Florida. Id at 5. The Florida easement allows visitors and employees of Fort Zachary Taylor State Park to use Private Street to access the park. Singh secured access to the Parcel, only allowing property owners, naval personnel, and park employees and visitors ingress and egress. Id.

Next, Singh began to develop the Parcel into a gated, residential community. Id at 6. At the outset of construction, Singh and the City signed a Development Agreement that allowed Singh to impose restricted vehicular access to the Parcel. Id. During construction, Singh also installed electronic gates at every entrance to the Parcel except Private Street, which was manned by guards pursuant to the Navy and Park easements. Id. Singh was allegedly permitted to restrict access based upon the Development Agreement. Id at 7. Before turning over official ownership of the Parcel to Plaintiffs, Truman Annex Master Property Owners Association ("Association" or "Plaintiffs"), Singh conveyed "most of the common areas and streets, including the Private Street," to the Association in fee simple. Id.

In 1997, Singh turned over control of the Parcel to the Association. Id. For the four subsequent years, the Association restricted the general public's access to Private Street, allowing access only to member/property owners, Navy personnel, and park employees and patrons. Id.

Further, the City was then given the opportunity to purchase a portion of the Naval base's remaining property, the waterfront parcel, pursuant to the Base Closure and Realignment Act of 1990. Id at 8. The City proposed a traffic plan for its potential purchase that called for the use of Plantiff's roadways to access the waterfront parcel. Id. A dispute arose between Plaintiff and the City regarding use of Plaintiff's roadways to access the City's potential waterfront parcel. Id at 10. The Plaintiff and City engaged in mediation and developed a "tentative agreement" whereby the Plaintiff would provide the City a license to use Private Street as an egress from the waterfront property. Id. In return, City would agree that Plaintiff owned Private Street, and that Fort Street, Truman Avenue, and Petronia Street could also be used to access the waterfront parcel. Id. This "tentative agreement" was approved by the City Commission, but a new City Commission was elected and the "tentative agreement" was not enforced. Id. The new City Commission stated that the City had the right to use the Private Street for both entry and exit of the waterfront parcel. Id at 11. The new City Commission also allegedly made public statements claiming that the City owned all of the streets, including Private Street, within the Parcel. As a result of the dispute, Plaintiff filed a state court action on or about January 16, 2006 against the City. Id.

Plaintiff's also allege that around the time Plaintiffs filed their state lawsuit, the City met secretly with the Navy to discuss the Navy Easement on Private Street. Id. The United States, through the Navy, claimed that the Navy easement over Private Street was appurtenant, ran with the waterfront parcel, allowed for unrestricted vehicle ingress and egress of the waterfront parcel, and that all of these rights ran to the City when the parcel was conveyed. Id at 12. The City now claims that it has the right, acquired from the Navy's easement, to use Private Street for general

vehicular ingress and egress to the waterfront parcel. Id at 13.

Plaintiff's claim that the Navy easement was not appurtenant, that the easement was restricted to the ingress and egress of authorized Navy personnel, and ultimately, that Plaintiff, not City, owns Private Street. Id. Plaintiff maintains that they have fee title ownership to Private Street, subject to the Navy and Park easements, based upon Singh's special warranty deed conveyance. Id at 15. Plaintiff filed fourteen separate counts in their complaint:[1]

**Count I:** Filed Against United States and the City

- Seeks declaratory judgment that Navy easement is in gross and did not run with the waterfront parcel when the Navy conveyed it to the City
- City does not have any legal right, based upon the Navy easement, to use Private Street without Restriction

**Count II:** Filed Against United States and the City

- Seeks declaratory judgment that Navy easement was only for vehicular ingress and egress of authorized Navy personnel
- City is also restricted by conditions of Navy easement
- Navy easement can not be extended beyond original scope

**Count III:** Filed Against United States and the City

- Seeks Court affirmation that Plaintiff reasonably relied on the representation of the Navy and the City that Plaintiff had the right to restrict access to Private Street
- Plaintiff's reasonable, detrimental reliance estopps United States and the City from stating that Plaintiff cannot restrict access to private street

**Count IV:** Filed against United States and City

- Seeks declaratory judgment that Private Street was never dedicated as a public right-of-way pursuant to Florida Statute § 95.361 or any other Florida law.

**Count V:** Filed against Navy and the City

---

[1] All of the counts listed are excerpted from Plaintiff's Complaint pages 15 -37.

4

- Seeks declaratory judgment that the City lost any ownership of Private Street, even under the Whitehead Map of 1829, when the City conveyed the Parcel to the Navy
- Plaintiff owns Private Street

**Count VI:**   Filed against United States and the City

- Seeks declaratory judgment that Plaintiff's installation of gates on Private Street does not violate Navy easement

**Count VII:**   Filed against United States and the City

- Seeks declaratory judgment that any use of the Navy easement to access the waterfront parcel after the residential development is completed would unreasonably interfere with Plaintiff's use of Private Street and put a high economic cost on the homeowners

**Count VIII:**   Filed against United States and the City

- Seeks declaratory judgment that neither the Navy nor the City has any legal basis to claim the right to use Private Street for the general public's use of Private Street for vehicular ingress and egress to the waterfront parcel

**Count IX:**   Filed against the City

- Seeks declaratory judgment that the City does not have any legal claim to Private Street based upon the Whitehead Map of 1829; or if there was a property right, that right was terminated by condemnation in 1942

**Count X:**   Filed against the City

- Seeks declaratory judgment that the City has no authority, based upon the Park easement, to allow vehicular ingress and egress on Private Street to reach the waterfront parcel

**Count XI:**   Filed against the City

- Seeks declaratory judgment that City has waived its claim that it, rather than Plaintiff, owns Private Street

**Count XII:**   Filed against City

- Seeks declaratory judgment that the Development Agreement and

5

        Development Order pertain to unrestricted vehicular ingress and egress of the Parcel not the waterfront parcel

**Count XIII**:  Filed against the City

- Seeks declaratory judgment allowing Plaintiff to restrict vehicular traffic on Private Street to property owners, authorized Navy personnel, and park persons pursuant to the Development Agreement

**Count XIV**:  Filed against the City

- Seeks declaratory judgment that Plaintiff may regulate vehicular traffic on Private Street pursuant to the Development Agreement and Development Order
- Plaintiff can regulate vehicular traffic by limiting access to Private Street to only property owners, authorized Navy personnel, and park persons

## II. <u>Standard of Review</u>

### A.  <u>Motion to Dismiss Pursuant to Rule 12(b)(1)</u>

As the Eleventh Circuit explained in <u>Morrisson v. Amway Corp.</u>:

> Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

323 F.3d 920, 925 n.5 (11th Cir. 2003). Here, the Defendant's Motion to Dismiss (dkt # 6) is a factual attack because it relies on extrinsic evidence, specifically a state court complaint, and does not assert lack of subject matter jurisdiction solely on the basis of the pleadings. Therefore, this Court will consider the extrinsic evidence submitted along with the Defendant's Motion to Dismiss (dkt # 6). Additionally, this Court notes that when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56.

6

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

### III. Discussion

Defendant asserts that this Court should dismiss counts IV, V, IX, X, XI, XII, XIII, and XIV ("Contested Claims") for a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12 (b)(1). In analyzing Defendant's claim, this Court will engage in a two step inquiry. First, this Court will determine whether the Court has subject matter jurisdiction over the claims in question pursuant to 28 U.S.C. § 1367. Next, assuming this Court finds supplemental jurisdiction under § 1367, the Court will determine whether to exercise its discretion and adjudicate those claims.

#### A) § 1367 Supplemental Jurisdiction

This Court does have supplemental jurisdiction over the Contested Claims.

United States Code § 1367(a) states:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

In this case, the Court has original jurisdiction over Counts I through III and VI through VIII (inclusive), pursuant to the Quiet Title Act, 28 U.S.C. § 1346(f). These claims stem from a

7

controversy regarding title and encumbrances to real property where the United States is an interested party. *See* Compl. at 2. The Court, under § 1367, has supplemental jurisdiction over any other claims that arise from the same case or controversy. The same case or controversy language is jurisprudentially rephrased as the "state and federal claims must derive from a common nucleus of operative fact." *See* Osborn v. Haley, 127 S.Ct. 881, 896 (2007) (quoting Mine Workers v. Gibbs, 383 U.S. 715, 725).

Here, the Contested Claims, as well as the other claims, both arise from the long and complicated history of the Parcel, its owners, and the status of its encumbrances. Even though the Contested Claims specifically relate to the Navy easement, and the other claims deal specifically with the City, they all relate to the current right of ingress and egress along Private Street. The quiet title action is largely only relevant because of the current dispute with the City and vice-versa. The claims do not have to lie against identical parties or arise from the same facts, but rather, the claims can lie against similar parties and arise from common facts. *See* Tamiami Partners v. Miccosukee Tribe of Indians of Florida, 177 F.3d 1212, 1223-24 (11th Cir. 1999).

Therefore, this Court holds that it does have supplemental jurisdiction over the Contested Claims, under § 1367, because all the claims arise from a common nucleus of operative fact.

### B) § 1367(c) Discretionary Exercise of Supplemental Jurisdiction

This Court utilizes its discretion and will not exercise supplemental jurisdiction over the Contested Claims.

United States Code § 1367 (c) states that:

> the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in the exceptional circumstances, there are other compelling reasons for declining jurisdiction.

If one § 1367 (c) factor is present, the court is within its discretion not to exercise supplemental jurisdiction. *See* Palmer v. Hospital Authority of Randolph County, 22 F. 3d 1559, 1569 (11th Cir. 1994).

In this case, the Court declines to assert supplemental jurisdiction over the Contested Claims for three reasons pursuant to § 1367 (c). First, claims IV, V, and IX, raise novel and complex issues of state law pertaining to Florida Statute § 95.361 and the Whitehead Map of 1829, respectively. Further, claims IV, V, and IX regard a dispute between Plaintiff and City, not the United States. Second, claims X, XI, XII, XIII, XIV are claims against the City stemming from agreements, settlements, and state easements. In these claims, state law claims, issues, and actors predominate over the quiet title claims against the United States that provide this Court with original jurisdiction. The Development Agreement at issue was a settlement agreement between Plaintiff and the City, and the Agreement predominates over any claim against the United States or the Navy. Third, this Court chooses not to exercise supplemental jurisdiction over the Contested Claims based upon the compelling reason that there is a very similar action

pending in Florida state court. See Def. Mot. Ex A. The Plaintiff's State court case is an action against City stemming from the same dispute, development agreements, and ingress and egress issues to the Parcel. Id. Thus, all of the Contested Claims that are directed at the City are largely duplicative of Plaintiff's state court action. See <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817-18 (holding that pending state court actions are not a bar to Federal proceedings, but pending state court action is a factor in deciding whether to dismiss or abstain from adjudication).

Further, the Eleventh Circuit in <u>Palmer</u> held that federal courts, when determining whether or not to exercise supplemental jurisdiction, should also look to the *Gibbs* considerations. 22 F.3d at 1569 (stating "when one or more of these [1367(c)] factors is present, the additional *Gibbs* considerations may... influence the court in its decision concerning the exercise of such discretion.") Id. Some of the *Gibb's* factors are "judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together." Id. In this case, judicial economy would not necessarily be served by maintaining jurisdiction over all claims because the state court action has already commenced, and it already involves claims similar to those being dismissed. Regarding fairness to the parties, the Defendant, City, should not be made to answer both in state and federal court for disputes stemming from the Development Agreement. Third, this Court has original jurisdiction based upon the Quiet Title Act, the claims being dismissed are independent of the Quiet Title Act; thus, the Plaintiff could not have expected that all claims would necessarily have been tried together. Plaintiff's lack of expectation of all claims being tried together is supported by Plaintiff's filing of a state court action

10

containing similar claims.

This Court, exercising its discretion, will not grant supplemental jurisdiction over the Contested Claims.

## IV. Conclusion

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant City of Key West's Motion to Dismiss (dkt # 6) is GRANTED IN PART. It is further

ORDERED AND ADJUDGED that this Court *has* supplemental jurisdiction over Plaintiff's claims, but exercises its discretion and abstains from granting supplemental jurisdiction and adjudication over claims IV, V, IX, X, XI, XII, XIII, and XIV. It is finally

ORDERED AND ADJUDGED that Claims IV, V, IX, X, XI, XII, XIII, and XIV are DISMISSED, but Claims I, II, III, VI, VII, and VIII remain.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of October, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record